UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

| | | |
|---|---|---|
| THE EXPORT-IMPORT BANK OF THE REPUBLIC OF CHINA, | : | |
| | : | |
| Plaintiff - Appellant, | : | |
| | : | Docket No. 12-2619 |
| -against- | : | |
| | : | |
| GRENADA, | : | |
| | : | |
| Defendant - Appellee. | : | |

**APPELLEE'S MEMORANDUM OF LAW IN OPPOSITION TO APPELLANT'S MOTION TO STAY VACATUR OF RESTRAINING NOTICES AND DISBURSEMENT OF CERTAIN FUNDS PENDING APPEAL**

Brian E. Maas
Khianna N. Bartholomew
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Avenue
New York, New York 10022
Tel.: (212) 980-0120
Fax: (212) 593-9175
bmaas@fkks.com
kbartholomew@fkks.com

Steven D. Greenblatt
THE LAW OFFICE OF STEVEN D.
GREENBLATT
480 Broadway, Suite 328
Saratoga Springs, New York 12866
Tel.: (518) 824-1254
Fax: (518) 824-5704
sgreenblatt@sdgesq.com

*Attorneys for Appellee Grenada*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

BACKGROUND ........................................................................................... 2

ARGUMENT ............................................................................................... 7

   I.    THE HARM TO GRENADA FROM A STAY OF THE MERITS ORDER EXCEEDS ANY INJURY EX-IM MAY INCUR IN THE ABSENCE OF A STAY ........................................................................................... 8

       A.    A Stay of the Restraining Notice Vacatur Will Greatly Harm Grenada..... 8

       B.    Ex-Im Will Not Suffer Irreparable Harm in the Absence of a Stay of the Vacatur of the Restraining Notices ........................................... 10

       C.    Ex-Im Cannot Show That Any Harm it Would Suffer From the Release of the Grynberg Funds Outweighs the Potential Harm to Grenada ............. 12

   II.   EX-IM HAS NOT SHOWN THAT IT IS LIKELY TO SUCCEED ON THE MERITS OF ITS APPEAL ..................................................................... 13

       A.    Vacatur of Restraining Notices .............................................. 13

       B.    Grynberg Funds ................................................................ 17

   III.  THE PUBLIC INTEREST IS SERVED BY THE DENIAL OF EX-IM'S MOTION ....................................................................................... 18

CONCLUSION .......................................................................................... 19

i

# **TABLE OF AUTHORITIES**

Page

**Cases**

*Bickerstaff v. Vassar College,*
196 F.3d 435 (2d Cir. 1999)................................................................14

*Brenntag Int'l Chems. Inc. v. Bank of India,*
175 F.3d 245, 249 (2d Cir. 1999).......................................................10

*Centauri Shipping Ltd. v. Western Bulk Carriers KS,*
528 F. Supp. 2d 186 (S.D.N.Y. 2007) ..........................................10, 11

*EM Ltd. v. Republic of Arg.,*
473 F.3d 463 (2d Cir. 2007)........................................................16, 17, 18

*General Transp. Servs. Inc. v. Kemper Ins. Co.,*
No. 5:03-CV-620, 2003 U.S. Dist. LEXIS 12630 (N.D.N.Y. June 25, 2003)........................11

*Hayes v. City University of New York,*
503 F. Supp. 946 (S.D.N.Y. 1980) .............................................8, 12, 13

*Hilton v. Braunskill,*
481 U.S. 770, 776, 107 S. Ct. 2113, 2119, 95 L. Ed. 2d 724, 733 (1987)...........................7, 8

*In re "Agent Orange" Prod. Liab. Litig.,*
517 F.3d 76 (2d Cir. 2008)...................................................................16

*JSC Foreign Econ. Ass 'n Technostroyexport v. Int'l Dev. & Trade Servs.,*
295 F. Supp. 2d 366 (S.D.N.Y. 2003)..................................................16

*Letelier v. Republic of Chile,*
748 F.2d 790, 798 – 99 (2d Cir. 1984)..................................................11

*LNC Invs., Inc. v. Republic of Nicar.,*
96 Civ. 6360, 2000 U.S. Dist. LEXIS 7738 (S.D.N.Y. June 8, 2000)........................12, 15, 16

*Nat'l Fed. of Independent Business et al. v. Sebelius, Secretary Of Health and Human Services, et al.,*
567 U. S. ____ (2012) [p. 33 of Slip Op] ............................................14

*Republic of Argentina v. Weltover, Inc.*,
    504 U.S. 607 (1992) ...................................................................................13, 14, 15, 16

*Sampson v. Murray*,
    415 U.S. 61 (1974) ...................................................................................................11

*Thapa v. Gonzales*,
    460 F.3d 323 (2d Cir. 2006) .......................................................................................8

## Rules & Statutes

Fed. R. Civ. P. 62(c) ......................................................................................................7

Fed. R. App. P. 8(a) ......................................................................................................7

Second Circuit Local Rule 31.2 .................................................................................3, 11

22 U.S.C. § 1650a ..........................................................................................................4

28 U.S.C. § 1603(d) ......................................................................................................14

28 U.S.C. § 1610(a) ........................................................................................................5

28 U.S.C. § 1610(c) ....................................................................................................3, 11

N.Y.C.P.L.R. § 5222(b) ..................................................................................................2

N.Y. Jud. Law §475 ........................................................................................................4

## PRELIMINARY STATEMENT

Defendant-Appellee Grenada opposes Plaintiff-Appellant The Export-Import Bank of the Republic of China's ("Ex-Im") Motion to Stay Vacatur of Restraining Notices and Disbursement of Certain Funds Pending Appeal ("Second Stay Motion"). Ex-Im has already sought and been denied identical relief in the District Court ("First Stay Motion")[1] and it raises no arguments now that were not already rightly rejected the first time they were presented.

This Court should now also conclude that a stay pending appeal of the District Court's June 22, 2012 Opinion & Order ("Merits Order") is inappropriate because Ex-Im has failed to meet any of its burdens of proof. In particular, (1) the likelihood that Grenada will suffer great harm to its economy and environment should a stay be granted as to either prong of the Merits Order far outweighs the insignificant monetary injury, if any, that Ex-Im might incur absent a stay; (2) Ex-Im has shown little possibility of success on the merits of any aspect of its appeal as the District Court correctly analyzed the "commercial activity" exception to sovereign execution immunity; and (3) underlying policy considerations favor denial of the stay. Moreover, Ex-Im's burdens of proof on each factor are even more rigorous due to the "sliding scale" manner in which they must be assessed – the stay movant must counterbalance any weak showing on one or more factors with a much stronger showing on the others. Here, as the District Court found, Ex-Im's showing is particularly weak as to the balance of harms, requiring, therefore, much stronger showings on each of the other factors than Ex-Im can muster. The Court, therefore, should deny the Second Stay Motion.

---

[1] *See The Export-Import Bank of the Rep. of China v. Grenada*, 06-CV-2469, Docket #105 (Mem. in Support of First Stay Motion ("First Stay Mem."), 106 - 111 (Mem. in opposition to First Stay Motion and supporting affidavits ("First Stay Op. Mem."), 112 – 113 (Reply Mem. in Support of First Stay Motion ("First Stay Reply Mem."), and 114 (Order denying First Stay Motion ("Stay Order"). All subsequent references herein to "Docket #" are to this docket.

## BACKGROUND

On March 16, 2007, the District Court entered an amended judgment in favor of Ex-Im and against Grenada in the amount of $24,997,596.84 on Ex-Im's claim that Grenada had defaulted under four loan agreements. Since 2007, Ex-Im has engaged in a variety of post-judgment discovery and enforcement efforts, including, as described below, its attempts to restrain and seize the funds at issue on the present Motion.

### The Restraining Notices

Beginning in October 2011, pursuant to N.Y.C.P.L.R. § 5222(b), Ex-Im sent restraining notices to various air and cruise lines that fly or sail into Grenada, each of which it alleged "may owe a debt to the judgment debtor, Grenada, or may be in possession or in custody of property in which the judgment debtor has an interest" (the "Restrained Entities").[2] By service of the restraining notices, Ex-Im effectively cut-off all payments that the Restrained Entities are required by Grenadian law to make to one or more Grenadian public authorities (the "Statutory Corporations")[3] as conditions of their use of Grenada's public facilities and services (the "Restrained Funds"), such as the airport, seaport and related services. *See* Docket #78 at 4 – 5.

In order to maintain its essential tourist industry, Grenada has continued to allow the airlines and cruise lines to use its facilities and the Statutory Corporations have borrowed needed

---

[2] *See* Restraining Notices attached as exhibits to the Affidavit of Steven D. Greenblatt dated March 20, 2012 ("Greenblatt Aff.") filed in Support of the Joint Motion to Vacate Restraining Notices ("Vacatur Motion"). *See* Docket # 79 (Greenblatt Aff.), and # 78 (Mem. of Law in Support of Vacatur Motion ("Vacatur Mem.").

[3] The "Statutory Corporations" were each established pursuant to Grenadian statutes as independent corporate entities. Those affected by the Retraining Notices are the Grenada Airports Authority ("GAA") and its wholly-owned subsidiary, Aviation Services of Grenada ("ASG"), the Grenada Solid Waste Management Authority ("GSWMA"), the National Water and Sewage Authority ("NWSA") and the Grenada Ports Authority ("GPA"). *See* Vacatur Mem., Docket #78, at 5 – 6.

operating funds from third party lenders. *See* Docket #78 at 5; Docket #106 at 15 – 16.[4]  Each Statutory Corporation, however, is now reaching the limits of its ability to borrow, and each faces the near-term probability of significant operational degradation, which will have further detrimental consequences for Grenada's overall economy and even its environment. *Id.*

On March 20, 2012, Grenada and the Statutory Corporations (together, the "Joint Movants") moved the District Court for an order vacating the Restraining Notices on four principal grounds:  (1) that the Restrained Funds were immune from attachment or execution under the Foreign Sovereign Immunities Act ("FSIA"); (2) that the Statutory Corporations were independent and distinct juridical entities from Grenada whose assets could not be restrained in enforcement of Ex-Im's judgment; (3) that even if discovery was required to settle this "alter ego" question, due process required immediate vacatur until Ex-Im bore its burden of proving an alter ego relationship; and (4) that even if discovery was required on the question of execution immunity, immediate vacatur was still required due to Ex-Im's failure to first obtain Court permission to move against the Restrained Funds, as it was required to do under FSIA § 1610(c).

Ex-Im responded with a Cross Motion for Discovery and Turnover, arguing, in sum, that it had no prerequisite burdens to satisfy as to either the "alter ego" question or the FSIA, that the FSIA's "commercial activity" exception to execution immunity was applicable to the Restrained Funds, and that regardless, it was entitled to have the Restraining Notices remain in effect while it conducted discovery on the issues raised by the Vacatur Motion. *See* Docket # 85 – 87.

**The Grynberg Funds**

On December 8, 2011, pursuant to an agreement between Grenada and Ex-Im, Grenada deposited $300,486.69 (the "Grynberg Funds") with the Clerk of the Court in the Southern

---

[4] The Affidavits cited in Support of the First Stay Op. ("Stay Affs.") are at Docket # 107 – 111 and attached hereto as Exhibits A - E.

District of New York. The Grynberg Funds represent legal fees and costs that were awarded to Grenada in an unrelated international arbitration proceeding commenced under the International Convention on the Settlement of Investment Disputes before the International Centre for the Settlement of Investment Disputes ("ICSID"). Claimants therein alleged that Grenada had breached a treaty between the United States and Grenada by denying an application for a petroleum exploration license. Grenada, represented by Freshfields Bruckhaus Deringer US LLP ("Freshfields"), denied the allegations, and the panel denied all of the claims and dismissed the arbitration. On Grenada's motion, the arbitration panel awarded Grenada its full legal costs, plus the unrefunded advance Grenada paid towards the costs of ICSID, plus interest at a rate of 3.25 percent compounded from the date of the award until payment (the "Award"). Grenada confirmed the Award pursuant to 22 U.S.C. § 1650a in the District Court for the Southern District of New York. Thereafter, Grenada successfully levied on the Judgment. After Ex-Im filed restraining notices against these funds (claiming rights as a judgment debtor of Grenada), Grenada agreed to deposit the funds with District Court pending the Court's determination as to whether they were exempt from execution under the FSIA.

On February 6, 2012, Grenada moved the District Court for an order declaring the Grynberg Funds immune from attachment under the FSIA. *See* Docket #68 – 70. Grenada also, with Ex-Im's agreement, presented the argument of its former counsel, Freshfields, that should the funds not be immune from attachment by Ex-Im, Freshfields would have a superior lien interest under Section 475 of the New York Judiciary Law. Ex-Im cross-moved (Docket # 72 – 74) seeking turnover of the funds and arguing that the apparent intention of Grenada to use some of the funds to compensate the lawyers who had represented it in the arbitration proceedings constituted a "designation" for use that brought the funds within the FSIA's "commercial activity

4

in the United States" exception to sovereign execution immunity.  *See* 28 U.S.C. §1610(a).

Grenada opposed the cross-motion, arguing that the Grynberg Funds had never been used for a

commercial activity, having been immediately frozen upon levy, and that the expressed intention

to pay its lawyers was not a "designation" that could implicate the immunity exception.  *See*

Docket #76.

### The District Court's Order & Ex-Im's First Stay Motion

On June 22, 2012, the Court issued the Merits Order, finding that both the Grynberg

Funds and the Restrained Funds were immune from execution as neither category of funds

constituted "commercial activity in the United States."  In light of these conclusions, the District

Court vacated the Restraining Notices and denied both of Ex-Im's cross motions.

Ex-Im filed its Notice of Appeal of the Merits Order on June 27, 2012.  Ex-Im did not,

however, file a motion to stay the Merits Order pending resolution of its appeal until almost a

month later, on July 25, and even then, only after being prompted to do so by the District Court.

*See* Docket # 114 at 1 (noting that "Plaintiff never sought a stay prior to the Court bringing the

concept to its attention") and 2, n.2 ("The fact that Ex-Im Bank failed to even request a stay until

I alerted the parties to the fact that there was no stay in place further suggests that there will be

no irreparable harm in the absence of a stay.").  That same day, Ex-Im requested the maximum

amount of time allowed per Second Circuit Local Rule 31.2 for submission of its appeal brief.

Ex-Im's First Stay Motion was predicated on identical grounds to those now advanced

here.  In both motions, the only irreparable injury claimed by Ex-Im from a denial of a stay

pending appeal is its alleged loss of access to the Restrained and Grynberg Funds.  *See* Docket

#105 at 7 – 8.  There, as here, Ex-Im denied any harm would come to Grenada from a stay.  First,

Ex-Im has claimed on both Motions that the prior commitment of the Grynberg Funds to

Grenada's lawyers eliminates any risk of harm to Grenada from a stay of that portion of the

Merits Order.  As to the Restrained Funds, Ex-Im has claimed that both Courts should disregard

the sworn affidavits of the principals and executives of the Statutory Corporations, who each

have described the ongoing and likely future harm caused by the Restraining Notices to the

operations of the Statutory Corporations and Grenada.  In both Stay Motions, Ex-Im also made

identical claims that it has a substantial possibility of success on the merits of its appeal,

claiming that the District Court incorrectly analyzed the "commercial activity" exception to the

FSIA with respect to both the Restrained and Grynberg Funds and incorrectly denied it

discovery.  Finally, Ex-Im contended and still contends that a stay would vindicate the public

interest in the enforcement of contracts and judgments.  *See* Docket # 106.

In opposition, the Joint Movants argued, as Grenada does again below, that the balance of

harms is heavily weighted against granting the stay – in the case of the Grynberg Funds, due to

the insignificance of the amount at issue to Ex-Im as compared to its relative importance to

Grenada; and with respect to the Restrained Funds, due to the magnitude of the harms that have

been and will be visited upon Grenada by further deprivation of the funds, and the lack of any

harm that Ex-Im will suffer.  On the possibility of a successful appeal, the Joint Movants noted

that the vast majority of Ex-Im's criticisms of the Merits Order concerned findings of fact that

would be subject to review by this Court only for abuse of discretion, and that as to each such

finding, the record contained ample support for the District Court's conclusions.  They also

observed that Ex-Im had raised no new factual or legal arguments that the District Court had not

already considered and rejected after extensive briefing, oral argument and analysis, including

each of its arguments as to the "designation" of the Grynberg Funds, and those concerning

whether the Restrained Funds were involved in "commercial activity in the United States." *See* Docket #106.

On August 17, 2012, the District Court issued the Stay Order denying Ex-Im's First Stay Motion. *See* Docket # 114. The Court found Ex-Im's showing as to the possibility of its own injury absent a stay to be particularly weak, noting twice, for example, that Ex-Im had not even sought a stay until it had been prompted by the Court to do so. *Id.* at 1 and 2, n.2. The District Court also found that Ex-Im's alleged injuries were "mere money damages," which were outweighed by the Joint Movants' strong showing with respect to the far more serious harms that a stay would cause them. *Id.* at 2. The District Court rejected Ex-Im's criticisms of its Merits Order, and held that Ex-Im had "not demonstrated a substantial possibility of success on appeal based on this Court's detailed discussion of Ex-Im Bank's arguments in" that Order. *Id.* Finally, the District Court held that the public interest in fostering international comity outweighed the enforcement of either contracts or judgments. *Id.* at 3. In spite of Ex-Im's failure to meet any of its burdens of proof on its motion for stay, the District Court nevertheless granted Ex-Im a temporary stay until August 31, 2012 to allow it to move for a stay pending appeal from the Court of Appeals. Ex-Im's Second Stay Motion was not submitted to the Court of Appeals until almost midnight on August 27, 2012 – over ten days after issuance of the District Court's Stay Order, and over two months since issuance of the District Court's Merits Order.

## ARGUMENT

The burdens that Ex-Im must satisfy in order to obtain a stay pending appeal under FED R. APP. P. 8(a) are identical to those that it failed to satisfy with respect to its previously denied motion for identical relief pursuant to FED R. CIV. P. 62(c). As the Supreme Court noted in *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 2119, 95 L. Ed. 2d 724, 733 (1987):

Under both Rules . . . the factors regulating the issuance of a stay are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

The Court of Appeals must assess these factors on a "sliding scale," where the strength of the showing that the moving party, Ex-Im, is required to make with respect to one factor "will vary according to the court's assessment of the other stay factors." *See Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006). Ex-Im, however, cannot sustain its burden of proof with respect to any of these factors, especially insofar as the weakness of its positions on any one factor in isolation must be offset by strong showings on others.

## I. THE HARM TO GRENADA FROM A STAY OF THE MERITS ORDER EXCEEDS ANY INJURY EX-IM MAY INCUR IN THE ABSENCE OF A STAY

Ex-Im bears a heavy burden with respect to the balance of harms. As stated in *Hayes v. City University of New York*, 503 F. Supp. 946, 963 (S.D.N.Y. 1980):

> Courts seek to avoid irreparable injury prior to trial, not because an irreparable injury is necessarily unjust, but because the legality of its imposition has yet to be determined. After judgment is entered, the propriety of the injury however irreparable has been judicially determined, and its imposition without further delay is surely more acceptable than prior to judgment. What follows from this greater acceptability for permitting irreparable injury is a corresponding increase in the burden of justifying its continued deferral.

*Hayes*, 503 F. Supp. at 964. This is a burden Ex-Im cannot satisfy.

### A. A Stay of the Restraining Notice Vacatur Will Greatly Harm Grenada

Ex-Im contends without basis that "Grenada . . . has not demonstrated that it will be severely harmed if a stay is granted." Motion to Stay Vacatur of Restraining Notices and Disbursement of Certain Funds Pending Appeal ("Ex-Im Mem.") at 19. In fact, Grenada has shown that the Restraining Notices have already caused substantial harm, and, as discussed in the Stay Affidavits submitted to the District Court by the principles of each of these entities, will

8

continue to do so if they are allowed to remain in effect. The Grenada Airports Authority, alone, is presently due approximately $1.6 million from Restrained Entities that have been unable to make payments due to the Restraining Notices. *See* Affidavit of Rodney George dated July 27, 2012 ("George Stay Aff."), Docket # 108, at ¶ 3. This amount represents 37% of the GAA's 2012 budget, the deprivation of which has forced the GAA to incur massive amounts of privately-funded, high-interest debt, and to forego critical updates and repairs to airport facilities essential to the continued operation of Grenada's airport. *Id.* at ¶¶ 4 – 5. The other Statutory Corporations have each been forced to react similarly to the absence of their funds. *See* Affidavit of Leslie Scott dated July 26, 2012 ("Scott Stay Aff."), Docket # 107, at ¶¶ 3 – 9 (describing debt incurred, maintenance foregone, and services curtailed as a result of the Restraining Notices); Affidavit of Karen Roden-Layne dated July 26, 2012 ("Roden Layne Stay Aff."), Docket # 110 at ¶¶ 4 – 7 (same, and noting that "[t]he Restraining Notices have, in short, pushed the [Grenada Solid Waste Management Authority] to the brink of operational paralysis and financial insolvency"); Affidavit of Ambrose Phillip dated July 30, 2012 ("Phillip Stay Aff."), Docket # 109, at ¶¶ 3 – 8 (noting, *inter alia*, Grenada Ports Authority has relied on high interest loans for operational expenses and critical maintenance projects foregone as a result of the Restraining Notices); Affidavit of Terrence Smith dated July 30, 2012 ("Smith Stay Aff."), Docket # 111, at ¶¶ 3 – 7 (same for National Water and Sewage Authority).

A stay pending appeal will only cause the situation in Grenada to deteriorate further. For instance, absent immediate vacatur of the Restraining Notices, the National Water and Sewage Authority will be unable to repair a major sewage conduit that it has recently discovered is dumping raw sewage into the near-shore marine environment, and which if not repaired will create a massive environmental and public health disaster. *See* Docket # 111 at ¶ 4. Public

health and safety in Grenada will also be impacted if funding is not soon restored to the Solid Waste Management Authority, which is also on the brink of shutdown due to the Restraining Notices. *See* Docket # 110 at ¶ 7. A stay would also risk bringing an end to the continued operation of the ports resulting from service interruptions and failures of essential operational and safety equipment and facilities. *See* Docket # 108 at ¶¶ 6- 8; #107 at ¶ 9; and #109 at ¶ 6. Needless to say, any diminishment or closure of the ports of Grenada would only deepen the country's financial troubles as tourism and cargo revenues would shrink, if not disappear, leading to even more contraction of the government's ability to maintain essential public services. *See* Docket # 108 at ¶ 8; #107 at ¶ 9. These harms are real, imminent and potentially devastating, and outweigh any risk that Ex-Im may be delayed in collecting on its judgment.

## B. Ex-Im Will Not Suffer Irreparable Harm in the Absence of a Stay of the Vacatur of the Restraining Notices

The above-described harms stand in stark contrast to the mere monetary injury Ex-Im has alleged it will suffer in the absence of a stay, which, as a matter of law is not irreparable. *See* Stay Order, Docket #114, at 2. *See also Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F. Supp. 2d 186, 193 – 95 (S.D.N.Y. 2007) (judgment creditor cannot claim irreparable injury based on "reasonable chance that [the defendant] may not be able to satisfy future money judgments obtained by plaintiff against defendant" because "the monetary injury alleged by plaintiff is not the type of injury that may justify a stay of the vacatur pending appeal").

Ex-Im's reference to "Grenada's history of non-payment and its claimed inability to pay the judgment," does not align this case with the facts of *Brenntag Int'l Chems. Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999), where the debtor was judged insolvent. Ex-Im. Mem. at 13. As the District Court found in denying the First Stay Motion, Grenada is not insolvent and

has assets and generates revenue. *See* Docket #117 at 2.[5] *See also, Centauri,* 528 F. Supp. 2d at

194 – 195 (declining to apply insolvency exception where judgment debtor was in possession of

assets, generating pre-tax profits, and is not in danger of imminent insolvency); *General Transp.*

*Servs. Inc. v. Kemper Ins. Co.*, No. 5:03-CV-620, 2003 U.S. Dist. LEXIS 12630, at *3-4

(N.D.N.Y. June 25, 2003) (declining to apply insolvency exception because "although Plaintiff

arguably raises questions about [the defendant's] present financial condition, its assertions fall

far short of establishing that [the defendant] is in 'imminent' danger of becoming insolvent").

Thus, as a matter of law, Ex-Im's claimed injury is not irreparable. *See Centauri*, 528 F. Supp.

2d at 195 ("Therefore, because '[t]he possibility that adequate compensatory or other corrective

relief will be available at a later date . . . weighs heavily against a claim of irreparable harm,'

*Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974), the Court rejects

plaintiff's alleged monetary injury as a basis for a stay of the vacatur pending appeal.").[6]

     In fact, as the Restrained Funds constitute ongoing obligations and revenue streams

payable to Grenada, Ex-Im has no injury claim at all. Should Ex-Im prevail on its appeal and

succeed in having the Restraining Notices reinstated, these payments will still be available for

---

[5] Whether its collection efforts are ultimately frustrated by the fact that Grenada "does not have assets outside Grenada that are subject to execution," Ex-Im Mem. at 13, is irrelevant to the insolvency inquiry and is a situation expressly contemplated by the FSIA. *See Letelier v. Republic of Chile,* 748 F.2d 790, 798 – 99 (2d Cir. 1984) (congress expressly crafted the execution immunity provisions of the FSIA with the understanding that creditors may be unable to enforce judgments against sovereign nations and may be left with a "right without a remedy").

[6] Regardless of the applicability of the insolvency exception, Ex-Im faces no risk of injury from the denial of a stay as it has yet to even establish that judgment debtor Grenada has an attachable interest in the Restrained Funds – which it must first do before it can validly restrain the funds. *See* Reply Mem. of Law in Support of Vacatur Motion ("Merits Reply Mem."), Docket #89 at 8 – 12 (*citing JSC Foreign Econ. Ass 'n Technostroyexport v. Int'l Dev. & Trade Servs.,* 295 F. Supp. 2d 366 (S.D.N.Y. 2003)). And, even if the Statutory Corporations are assumed alter egos of Grenada, the Restraining Notices would still be invalid due to Ex-Im's failure to first obtain a court order permitting their issuance as per FSIA § 1610(c). *See* Merits Reply Mem. at 3 – 8. *See also* Merits Order at 6, n. 8 (noting that "Grenada is likely correct" that the Restraining Notices were "improperly issued by Ex-Im Bank").

satisfaction of the judgment.[7]  It's Motion should, therefore, be denied.  *See Hayes*, 503 F. Supp. at 964 (holding that "in general, the losing side in a litigation should bear a heavier burden on this issue [of irreparable harm], when the injury alleged is not of the sort that would interfere with the appellate function").  *See also LNC Invs., Inc. v. Republic of Nicar.*, No. 96 Civ. 6360, 2000 U.S. Dist. LEXIS 7738, at *4 (S.D.N.Y. June 8, 2000) (denying motion for stay pending appeal because movant's loss of access to restrained funds is not irreparable injury).

### C.    Ex-Im Cannot Show That Any Harm it Would Suffer From the Release of the Grynberg Funds Outweighs the Potential Harm to Grenada

Just as did the District Court, this Court, too, should reject Ex-Im's claim that it will suffer irreparable harm should the Grynberg Funds be released.  The claimed injury is purely monetary, which is not irreparable as a matter of law, and Ex-Im cannot avail itself of the insolvency exception to that rule.  *See*, *supra*, at 10 – 11.

Ex-Im actually faces no risk of harm from the release of the Grynberg Funds even assuming the District Court's Merits Order is reversed.  Ex-Im does not have a specific interest in the Grynberg Funds.  Instead, Ex-Im's interest is in the approximately $30 million judgment against Grenada of which the Grynberg Funds represent about one percent (1%).  As the District Court found, post appeal, Ex-Im could still satisfy its judgment via execution on the Restrained Funds.  *See* Docket #114 at 2 ("If Ex-Im Bank prevails on appeal and prevails on a subsequent turnover motion, it can execute on that stream of payment due to the Restrained Entities.").

As to the corresponding harm to Grenada if the Grynberg Funds remain restrained, the reality is that $300,000 is a significant amount of money to Grenada.  Contrary to Ex-Im's

---

[7] Ex-Im's speculations as to the future of this revenue stream are belied by the fact that even during the worst global recession in a century, air and sea transit into and out of Grenada has still been sufficient to generate millions of dollars of revenue in the less than a year that the Restraining Notices have been in effect.  *See supra*, p. 8.

argument, Grenada has not renounced its interest in the Grynberg Funds, but has spent the better

part of a year fighting to have its interest in the Funds recognized.  While Grenada may have an

obligation to Freshfields, it has a wide array of other financial obligations and it has the right to

use these funds in the manner that it determines is in the best interest of the Grenadian people.

## II.     EX-IM HAS NOT SHOWN THAT IT IS LIKELY TO SUCCEED ON THE MERITS OF ITS APPEAL

Assessment of Ex-Im's possibility of success on the merits of its appeal should be based

on "external, preferably objective, indicia of the accuracy of" the Merits Order, such as "the

extent to which the challenged decision is supported by precedent [and] the standard of review

that will govern the appeal."  *Hayes*, 503 F. Supp. 946.  Applying these criteria, Ex-Im has failed

to show a substantial possibility of success of appealing any aspect of the Merits Order.

### A.     Vacatur of Restraining Notices

The District Court vacated the Restraining Notices based on its finding that the

Restrained Funds are immune from execution or attachment under the FSIA as they are not used

in "commercial activity in the United States."  *See* Merits Order, Docket #100, at 6.  Contrary to

Ex-Im's suggestion, the District Court reached this conclusion based on a proper application of

the test for such exception set forth in *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614

(1992), including a thorough consideration of the "particular transactions" in which the funds are

collected and the *activity* of which the Restrained Funds are a part:

> Ex-Im Bank cites . . . *Weltover* . . ., in which the Supreme Court concluded that "a
> foreign government's issuance of regulations limiting foreign currency exchange
> is a sovereign activity because such authoritative control of commerce cannot be
> exercised by a private party; whereas a contract to buy army boots or even bullets
> is a 'commercial' activity, because private companies can similarly use sales
> contracts."  However, *Weltover favors* Grenada's position: the Restrained Funds
> are not involved in regular commercial transactions, but rather are collected as

part of the Corporations *regulation of and provision of access to Grenada's public facilities and services.*

Merits Order, Docket # 100, at 6 (emphasis added).

As Ex-Im concedes, *Weltover* and the FSIA required the District Court to make a factual determination as to what "activity" the funds at issue are a part of. *See* Ex-Im Mem. at 14 (*quoting* 28 U.S.C. § 1603(d) and stating that "the most fundamental point under *Weltover* and the FSIA is the identification of the 'commercial character' (or lack thereof) of the '*particular* transaction or act'") (emphasis supplied by Ex-Im). This is exactly what the District Court did, concluding based on the evidence before it that each instance of the collection of a payment by a Statutory Corporation from a Restrained Entity was an exercise of sovereign regulatory power.

Ex-Im's disagreements with this factual finding go entirely to the weight it believes the Court should have accorded the evidence before it, and will consequently be reviewed on appeal only for abuse of discretion. *See e.g.*, Ex-Im Mem. at 14 – 15 (the "Merits Affidavits themselves . . . offered significant evidence of the 'commercial character' of 'particular transactions or acts'). *See also Bickerstaff v. Vassar College,* 196 F.3d 435, 449 (2d Cir. 1999) (noting that "disputes as to the weight of the evidence . . . are for the fact finder to resolve") (citations and internal quotation marks omitted). Such an abuse is unlikely to be found on appeal, however, for two reasons. First, the District Court was well within its rights to give little weight to the labels attached by the Stay Affiants to particular revenue collections. As the Supreme Court recently recognized, the labels given by a sovereign to particular payments are not determinative of either the nature of the payments or the activity of which they are a part. *See e.g., Nat'l Fed. of Independent Business et al. v. Sebelius, Secretary Of Health and Human Services, et al.*, 567 U. S. ____, slip op. at 33 (2012) ("It is of course true that the Act describes the payment as a 'penalty,' not a 'tax.' But . . . that label . . . does not determine whether the payment may be

14

viewed as an exercise of Congress's taxing power.").

More importantly, the District Court, expressly concluded based on the evidence before it that the Restrained Funds are collected as part of an exercise of Grenada's exclusive, sovereign power to regulate and provide access to its public facilities and services, and that none of these revenue collections – no matter the label given to them or the purpose to which the funds are ultimately put – could be undertaken by any private party. *See* Merits Order, Docket #100, at 6. The Court thus expressly – and correctly – determined that the Statutory Corporations were not acting "in the manner of a private player within" the market, *Weltover*, 504 U.S. 607, 614 since no private players could undertake similar collections or transactions.

The Court's conclusion is, therefore, not at odds with *Weltover's* "bullet purchase" analogy. *See* Ex-Im Mem. at 16. While both a sovereign's army and a private individual can purchase bullets, private individuals cannot compel payments to be made as a condition for access to the public services and facilities of a sovereign nation, as the Statutory Corporations are uniquely empowered to do in Grenada with respect to the services and facilities at issue in this case. Thus, the District Court's citation of *LNC Invs., Inc. v. Republic of Nicaragua*, No. 96 CIV. 6360 JFK, 2000 US Dist. Lexis 7814, * 15 – 17 (S.D.N.Y. June 8, 2000), where the Court held "taxes" collected by the government from airlines landing at its airport were not commercial transactions due to the unique power of the sovereign to impose such charges, required no further explanation: each of the individual charges levied by the Statutory Corporations are exactly like the "taxes" at issue in *LNC* – regardless of labels or purposes, they are uniquely imposed and imposable on the Restrained Entities by virtue of Grenada's sovereign power to demand such payments in exchange for access to its public resources. Like the "taxes" in *LNC*, therefore, they are not "commercial activities." Thus, the District Court properly applied governing precedent

and there is little likelihood that it's Merits Order will be reversed on appeal.

Ex-Im also wrongly contends that the District Court's denial of its cross motion for discovery reflects an abuse of discretion. As this Court has held, "[a] district court has wide latitude to determine the scope of discovery, and [w]e ordinarily defer to the discretion of district courts regarding discovery matters." *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) (citation and internal quotation marks omitted). Abuse of discretion will only be found where the denial of discovery impairs a party's ability "to establish the facts necessary to support his claim." *Id.* No such abuse occurred here.

In cases involving sovereign execution immunity determinations, this Court has expressly instructed the District Courts that "[d]iscovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination"). *EM Ltd. v. Republic of Arg.*, 473 F.3d 463, 486 (2d Cir. 2007). Here, the District Court's denial of discovery did not affect Ex-Im's ability to verify any such facts. In total, Ex-Im has had no less than six opportunities to convince the District Court that the "activities" relevant to the *Weltover* inquiry were the individual charges imposed by the Statutory Corporations on the Restrained Entities, that such charges were not akin to the "taxes" imposed on airlines in *LNC*, and that the public or private nature of those charges needed to be individually assessed on a charge-by-charge basis. *See* Mem. in Op. to Vacatur Motion, Docket #86, at 14 - 17; Reply Mem. in Support of Cross Motion, Docket # 91 at 7 – 10; Oral Argument Tr., Docket # 94; Ex-Im Supplemental Discovery Brief, Docket #96; First Stay Mem., Docket # 105 at 10 - 11; and First Stay Reply, Docket # 112 at 3 - 7. Had the District Court agreed with these factual conclusions, it could have ordered limited discovery, consistent with *EM Ltd.*, such as Ex-Im claims it is now entitled to with respect to each such collection. It did not, however, and, having concluded instead that each

individual collection was undertaken as an exercise of Grenada's exclusive, sovereign regulatory power, the District Court correctly refused to grant Ex-Im expansive and unnecessary discovery on issues that were not relevant to the immunity determination.

### B.      Grynberg Funds

Ex-Im is also incorrect to claim that there is a substantial possibility that this Court, will find that the Grynberg Funds are not immune from attachment despite the plain language of the FSIA. Such a result would necessitate the reversal of established precedent and the contravention of clear policies underlying the FSIA and the "commercial activity" exception.

Ex-Im relies primarily on its "designation for use" argument as the basis for what it claims to be its "substantial possibility of success" on appeal. *See* Ex-Im Mem. at 11, n.11. In so doing, Ex-Im implicitly concedes that the Grynberg Funds have not actually been used for a commercial purpose.[8] Moreover, this Court has not found that designation for use in the absence of actual use is sufficient to render funds attachable. *See, e.g.*, *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 484-85 (2d Cir. 2007) ("The plain language of the statute suggests that the standard is actual, not hypothetical, use. . . . Even *if* actual use were not required, *at least* specific designation for such use would be necessary.")(emphasis added). The decision of this Court in *EM Ltd.* did not expand the "commercial activity" exception to execution immunity to situations where the sovereign had not yet used the funds, even though a use had been announced. Instead,

---

[8] Ex-Im cites to no authority for its claim that Grenada's attempt to collect a foreign award from an international arbitration by availing itself of the Courts of the United States subjects the Grynberg Funds to attachment. Such a position runs contrary both to the purposes of the FSIA and the principles of comity underlying it.

this Court found that even if designation were sufficient, there was none.[9] Nevertheless, as the District Court properly found when Ex-Im raised this issue previously, the circumstances in *EM Ltd.* – where Argentina's *President* had stated that the funds at issue would be used to pay certain debts – was different than the situation here and Grenada's acknowledgement of an obligation to its lawyers did not constitute a "designation for use."

Judge Baer's decision is based on a proper analysis of the facts and a careful review of the law and Ex-Im's claim on this stay motion that there is a substantial possibility of success on this appeal should be rejected.

## III. THE PUBLIC INTEREST IS SERVED BY THE DENIAL OF EX-IM'S MOTION

Ex-Im argues on this stay motion that the public interest in enforcement of contracts warrants granting of a stay. However, as the District Court noted when Ex-Im made this argument previously, "[r]espect for the relationship between the United States and Grenada and for Grenada as a sovereign nation were crucial to my earlier judgment." Docket # 114 at 3. The Court then properly concluded, as this Court should now, that the commitment of the United States to principles of comity outweighs the policy interest in "the enforcement of valid contracts and the collection of valid judgments." *Id.* (internal citations omitted).

Here, the Restrained Funds are essential to the ongoing operation of public functions in Grenada while the Grynberg Funds represent an award of attorneys' fees and costs from the successful defense of an international arbitration. Basic notions of comity should compel this court to honor Grenada's sovereignty, as the District Court did, and deny this motion.

---

[9] Notably, in *EM Ltd.*, this Court found that repeated announcements by Argentina's President that the funds would be used in a particular way was not sufficient to constitute "actual use of designation for use." Certainly, if statements by a sovereign's President are insufficient, then hopeful statements at a court hearing by a lawyer to whom money is owed cannot satisfy a "designation for use" test, even were one legally supportable.

## CONCLUSION

For the foregoing reasons, Defendant-Appellee Grenada respectfully requests that the Court deny Plaintiff-Appellant The Export-Import Bank of the Republic of China's Motion to Stay Vacatur of Restraining Notices and Disbursement of Certain Funds Pending Appeal, and award such other and further relief as it may deem appropriate.

Dated:  New York, New York
       August 30, 2012            FRANKFURT KURNIT KLEIN & SELZ, P.C.

                                 By:   /s/Brian E. Maas
                                   Brian E. Maas
                                   Khianna N. Bartholomew
                                 488 Madison Avenue
                                 New York, New York 10022
                                 Tel.:  (212) 980-0120
                                 Fax:  (212) 593-9175
                                 bmaas@fkks.com
                                 kbartholomew@fkks.com


                                 THE LAW OFFICE OF STEVEN D. GREENBLATT

                                 By:    /s/ Steven D. Greenblatt
                                   Steven D. Greenblatt
                                 480 Broadway, Suite 328
                                 Saratoga Springs, New York  12866
                                 Tel.:  (518) 824-1254
                                 Fax:  (518) 824-5704
                                 sgreenblatt@sdgesq.com

                                 *Attorneys for Defendant-Appellee Grenada*